Number 241020, Personal Audio, LLC v. Google, LLC, Mr. Haney. Good morning, Your Honor. This is Mr. Haney. Okay. Handles. Sorry. Quite all right. May it please the Court, the District Court erred in granting JMOL because it, number one, overlooked substantial evidence that supported the verdict of infringement under the Court's original claim construction, and two, because the Court changed its claim construction after the jury's verdict. The claim construction of sequencing file required a file received by the player and stored by the processor be used by the processor to control playback of each song in the ordered sequence and to respond to control commands. The parties agree that the playlist file downloaded by Google Play Music is called List Items and that the playlist refers to List Items and not the cue. There are admissions from three Google witnesses, in addition to the testimony of Dr. Almaroth, who is a personal audios expert, that List Items, that downloaded file, is directly accessed in response to a go control command or a play control command to commence playback of the first song and dictate the sequence of playback thereafter. Which of the use cases, there were four, the parties talked about four use cases, which one are you primarily relying on here before us today? So one and two, the play command and the go command are use cases one and two, as argued in the, we used that terminology in the summary judgment briefing and in the motion in Lemony, and we believe use case three is also established, but primarily one and two. We didn't use that terminology primarily at trial because we thought it might be confusing for a jury, so it's really play and go, and then use case three is check playable song. So you're relying on one and two before us? One and two primarily, yes. Is the real issue here whether List Items controls the play in real time or whether it does so indirectly by communicating the information to the cue, which then does the control? Is that what we're really talking about here? I think so. I think that's a way it can be characterized, and the court made very clear that it doesn't need to be in real time in its pre-trial, its pre-verdict claim construction because the court said that, first of all, Google requested an amendment, an addition to the claim construction on the eve of trial on June 7th, which asked for to impose a requirement that the downloaded file be referenced when each song is played. The court declined to give that, and the prosecution history certainly doesn't impose a repeated reference requirement that the List Items be referenced each time a new song is played. So I'm a little confused as to what we're arguing about. Are we arguing about what the district court's claim construction was, or are we arguing what it should have been? We are not arguing the court's claim construction. We disagreed below with the court's claim construction, but we're not appealing the claim construction. What we are appealing is that the court modified its claim construction after the verdict, and that was the basis for its grant of JML. Specifically, the court did one of two things, and it's not entirely clear which one. It either said that you can't use copies. So the court's ruling was essentially, in the JML, was that a different file called the cue is used to control playback. But the court's claim construction pre-verdict makes very clear that it's okay if the cue is used as long as the originally downloaded file, which is List Items, is used as, quote, part of control. He said that. What about the clarification really on the eve of trial, where Judge Connolly made it clear that you can't have two files? Everything has to be one file. I don't believe he made that statement. I believe he said that you must start with the original file in response, to respond to a control command. You're talking about what I will call the first clarification. But then there was a second clarification pre-trial. Was there not? There was not. In fact, he denied a second request for clarification pre-trial, which was essentially along the same lines. Google asked for a curative instruction, and we addressed this in the blue brief at pages 4 and 5. They asked for a curative instruction along the same lines, and he declined to give it. So the claim construction that we got at the end of claim construction proceedings was the claim construction that was presented to the jury at trial. And only after the verdict was there an imposition of these requirements, either that only the original file be used, which is contrary to the construction that he gave to the jury, or that there's this repeated reference requirement that the downloader— It's really a question of whether it has to be, as I thought you agreed a moment ago, whether it has to be real-time control by list items or whether it can be communication of information to the queue, which is then stored and becomes part of the queue control. And I'm not sure why the real-time requirement isn't an appropriate gloss on the claim construction. Well, for two reasons. One, it wasn't in his original claim construction. And under this court's precedent in the Weiland case, you can't clarify your claim construction after the case goes to the verdict. And specifically— You can clarify before it goes to trial, right? Absolutely. And there was no such— The district court said a theory of infringement based on a showing that only a second file is used to control playback of each song in the ordered sequence and respond to control commands is not consistent with my claim construction. A copy of a file is not the file, but rather is a new and distinct file, i.e. a second file. So— 841071. So the court was not saying that a copy can't be used. He was saying that if you're only using the copy— This is the clarification I was talking about. I agree. So you told me there was no clarification. There was no clarification to indicate that you can't use copies. There was a clarification that if you only use the copy, then that doesn't meet his construction. And that's not what the evidence showed. The evidence showed that the list items was used directly in response to a go control command. That's for the first song, right? Not for each song. Yeah, so— Can you just answer that question? Yes, access to a go— execution of a go control command or a play command commences playback of the first song in the sequence and every single song thereafter. Each song thereafter in the absence of a further command. You don't need to— Did Dr. Almaroff ever say that? He did. He said— He seemed to be saying the cue, I thought, is the one that controls playback in response to control commands. So he said—and there's a quote on page 18 of the blue brief where he said that list items, that playlist, that originally downloaded sequencing file is used to control playback. He did describe how the data flowed through from— It was a flowing data collection of data theory that the playlist data from the list items table gets loaded into the cue list and then from there it goes to the cue. Where it's stored. And also where the control of the playback and the responding to control commands occurs. That was his theory. I don't know what file you're talking about when it comes to the list items table. So as to Judge Steik's comment that you interjected, what is stored, what is downloaded and stored is list items. There's no dispute about that. So there's no real-time control by list items? There is. In response to a go or play command, you go directly back to list items. Once it's—after it's downloaded and stored, you go directly back to list items to commence playback and it commences and playback continues in that order specified by list items. You're saying it's not using the stored information to do the controlling? It is. It is. It's using the stored information in the status. I'm still confused. I mean, I thought it was clear enough that list items is not engaging in real-time control. There's evidence from three witnesses that it is, and I don't want to lose Judge Chen's question too, so I'll try to answer both. What happens is that in response to a go or play command, the processor goes directly to list items, which is the downloaded and stored sequencing file. It starts playback. You just said it's downloaded and stored. So it goes to the stored file, right? It does, which is list items. So it's not real-time controlled by list items itself. It's controlled by a stored copy of the list items. List items is the stored file. Not a copy. List items is the downloaded and stored file, so it's not a copy. The copying comes after. Why did Amaroff say that the queue is the sequencing file? Dr. Amaroff described how the system worked and how the data flowed from the list items, which was the first sequencing file, and then it flowed to subsequent files. He basically said there were three sequencing files, right? One could characterize his argument that way. Because he was really more focused on just the data per se, not so much on a file per se, kind of like the distinction between a book and the text in the book. He was focused on the text, not the book itself. And then the text was getting copied into a new book, queue list items, and then the data and text got copied into a third book called queue. That's fair, but remember that the court construed file as a collection of data, so it wasn't... A collection of data with a file name. Where is the file name here? It's list items. And so what he described, and his flowing data theory is not... But where is there evidence that the list item controls the playback of each song? It might be evidence that it can control the playback of the first song of a playlist, but where is the evidence in the record where we can tell, oh yes, this thing called list items controls the playback of each song. Forget about queue list items. Forget about queue. It's all about list items tables. Yeah, the evidence is quoted at pages 18 through 22 of the blue brief, and what that evidence establishes is that... Well, I mean, where in the J.A.? Where is the quotable quote? Or from, I don't know, a Google document or Dr. Almoroff that says, yes, list items, assuming it's a file, not only receives and stores the data, but it also controls the playback of each song and responds to the results. Okay, so... Not the queue, not the queue list. Yeah, so with respect to... There's the testimony cited on pages 18 through 22 when you... And this is, so on 19, there's testimony of a Google witness, Reza Menko. When you hit that go command, does Google Play Music use the list items table to seed the queue? And the answer is yes, it does. In addition... So it's doing two things. It's starting playback, and it's seeding the queue. And the evidence... Seeding the queue means copying the data into the queue. It does. It copies the data into the queue, but it commences playback, and it keeps playing in the absence of a further control command. So you never have to go to the queue to decide to play the next song. It keeps playing in the order specified by the playlist, by the list items table, in response to a play or go command. There's no reason, logically. There's no evidence that you would need to go back to the queue after you start playback unless the user wanted to change the order later. So in response to go or play, you start with the very first song in list items, and you keep on playing. So list items, controls, playback of each and every song in the playlist. These two patents, they expired many years ago, right? They did expire. Is there any other pending litigation with respect to these long-expired patents? There is not. Okay. So is what we're talking about here, sort of what the definition of list items is, whether it's the stored data that you say constitutes list items and that does the controlling through the queue, or is it some other location that's the original list items? Yeah, there's no debate there. There's no debate that list items is the downloaded and stored file that contains the playlist. And so that's not disputed at all. The issue is whether that file, that list items file that is downloaded and stored, controls playback of each song in the sequence. There's testimony that it commences playback of the first song, and that it dictates the sequence in all subsequent data structures, and that the music keeps on playing in the order specified by that downloaded list items file in the absence of a control command. So, and again, the judge clarified pretrial and didn't change the clarification that as long as list items, that downloaded file, is part of control, then that meets his claim construction. He said that, I think personal audio is right. Having gone back and looked at the lexicography in question, I don't believe it's the case that the use of the file precludes the use of another file to execute the control function. All I said was that the file had to be used to control it, but that doesn't mean it can't be used with something else. But it must be used as part of the control. And we're going to quote that. Are you saying that the list items table and the cue are being used together? Yes. List items is used first, always, in response to a player vocal. I'm just trying to understand, because I didn't quite see that being said by Almoth anywhere. I mean, I see on A47271, he says the cue becomes the sequencing file. The cue is now the name of that collection of data. And it's the cue that's used for the user control, period. Stop. That's it. Yeah. On page 18, there's a quote, and I'm over my time here, but there's a quote where he says that that sequencing file, when he's referring to the list items, you can look at its appendix pages, 47242 to 243, when he says that sequencing file is used for user control. So then what he goes to do is says... I think he might be talking about cue, because at the bottom of A47244, he says the cue items, and then the cue that's actually used for user control, period. So... I think he said... He seems like he's pretty consistent when he says the cue that's actually used for user control, and then that will be the sequencing file. It's like whatever sequencing file is, it's sort of this shape shifter that moves between list items table, cue list, cue, and it's the cue that he keeps saying over and over again that's actually used for user control. He says both. He says both. He says that list items is used for user control. He says the cue is used for user... Where does he say that? Where does he say list items is used for user control? On page 47242, we've quoted language there on page 18 of the brief, and in that very same answer, earlier in the very same answer, he's referring to list items as that sequencing file. So... You say 847242? Correct. Where? I will get that in my response, or I can get it from right now. Go ahead and get it. Pardon? Go ahead and get it. Perfect. Which volume are the appendix? This is volume 3. Thank you.  So... On... And so on page 242, and he says... This is at line 16. 46242? 47242. 47242. And he says... And so there's the list table after that. So the list contains information about the lists, and in that table, and he talks about the various playlists. It's essentially the playlist at line 22, and then the position in the playlist. And then he continues on 47243. It's sent over a network... I'm sorry. What line are you on now? On line 3, as part of that same answer of page 47243 of the appendix. And he says it's sent over a network, and then it's stored, and then we'll eventually get to the third piece is where that sequencing file is used for control and navigating through the playlist. What does he mean by get to the third piece? Wouldn't that be the queue? It's the third piece of the court's claim construction. I think he's saying it's downloaded as piece 1, stored as piece 2, and then we'll eventually get to where that sequencing file, meaning referring to list items. To be consistent with what he says on the following page that when he's talking about the third piece, he's talking about the third piece of the trinity of the list items table, queue list and queue, i.e. he's talking about the queue there, just as he's talking about the queue on the next page when it comes to user control. I read his testimony. It says it's sent over a network, step 1, stored as step 2, and then we'll eventually get to the third piece. So that's how I understood it, and that's how the jury was entitled to understand it with all inferences being drawn in favor of the verdict winner. And certainly, just to be, so I'm not, so I'm entirely clear. Multiple structures, Dr. Elmoroth did testify that multiple structures are used to control playback, but Google's own witnesses and Dr. Elmoroth did not testify inconsistently with that. They all said that control starts with list items, and so the Google witness... But 847243 is your strongest piece of evidence to that effect, right? I know you keep saying it, and you've been keeping on saying it for 21 minutes, but when it actually comes down to the record, it's this statement right here. I would say that's not our strongest evidence. Our strongest evidence is the testimony from three Google witnesses that says list items, which is the downloaded and stored file, is directly accessed in response to a go or play command. The strongest evidence is from Google's own witnesses. Okay, I think we're out of time. We'll give you two minutes for rebuttal. Mr. Bagatelle. May it please the court, Dan Bagatelle for Google, and my colleagues Melissa Bailey and Jonathan Keats. I think, Judge Chen, you have it exactly right. This game's been... Excuse me, this appeal has been a bit of a game of whack-a-mole, that they've changed their theories at various times throughout the case, but... Help me to understand what list items is. Is it the stored file? Is that correct? List items are stored files.  List items is what comes down from the network and contains a jumble of files, and it's stored in a table called list items. Okay, but so if the stored file performs the three functions, then there's infringement, right? Yes, if list items performs... Actually, there's multiple functions. Actually, there are four, but if list items performs all those functions, then it would infringe the sequencing file limitation. The problem is that the only evidence at trial was that there was this flowing data theory, that a portion of the data in list items is extracted and put into another file called queue items, and a portion of the data in queue items is extracted and put into a working file, a working playlist called the queue, and everybody's testimony was that the queue is what controls playback. But is the queue controlling the playback using the data and information from list items? It is initially seeded, quote-unquote. That's the word, populated. So the data come over initially. If you hit play or go, some data will make its way over to the queue, and so that doesn't satisfy the claim construction because the district court made very clear, based on the lexicography during the re-exam history, that you can't just copy information over. You have to use the actual downloaded file to control playback of all songs and respond to control commands, and they don't contest that construction. Everybody's testimony. There were four times when personal audio itself said it was the queue that controlled the playback of all the subsequent songs. I'll list them for you. Appendix 47-244, we've already discussed. When he came back at 47-271, he had a slide that appears at 46-506, and then Mr. Hanley said it again in closing at 48-019. Our witnesses said the same thing. But is the seeded data that gets into the queue file doing the control? No. No. The actual control every time it looks to the queue. So it's true that in response to the initial play and go... But is the queue using the seeded data? No. Is the queue using the seeded data? From the list file. It's using copied data to initially start the play and go, but every time it's going to return to look at the queue and see what's going on. The example they used in their brief about a steering wheel is actually pretty helpful, and I think that's a good example. You need to continuously consult your steering wheel when you get out of the parking lot this evening, because if you turn the car right and then you stop looking at where the steering is, you'll keep doing donuts in the parking lot. I find those analogies... But here's the point. You have to constantly consult the sequencing file. Why do we know that? For two reasons. One, it's in the claim construction, because it says the same file has to be used to control playback of all songs. Two, where does that come from? I actually take a look at first appendix, page 8207. That is where the lexicography was. Is this the re-exam? It's the re-exam history. And that's where they distinguish between a mere playlist, just a bunch of songs, and a sequencing file that actually controls playback. And they say it's not just a playlist, but rather a file of data that the player references when deciding what audio fragment to play in response to the presence or absence of a control command. You have to continually consult. That's how this works. The sequencing file is what controls the playback of every song. And that's just not the way it works in the Google Play Music. So, Mr. Baggett, how would, in your view, can you explain to me how the list items file would have to work in order for there to be infringement here? It would have to go back and look at list items when deciding should I play song number two or song number three or song number eight. Every time it has to control the playback of each song and respond to any control command you give. Those are the requirements of the claim construction which they no longer dispute. So there has to be a reference back to list items. And there just wasn't any evidence of that because it isn't true. The only thing that they tried to argue was the Q. What's being referenced back to, you're saying, is the Q. Exactly. What they're saying is that the Q is doing this based on information that comes from list items, right? They are saying that the information originally came down into list items and then part of it was copied into the Q. And it's that information that originally came from list items that's doing the controlling. And that's exactly what the district court said before trial would not work. But is that an accurate statement, that it is the information that originally came from the list items? No, and what our witnesses said was that you initially populate the Q. So let's say you have a playlist of Beatles' greatest hits. And you download that playlist and then you hit play. So it'll then take the entire 28 songs, actually I guess it's 19, however many songs, say it's 28 songs on the Greatest Hits album, and it will put them in that order and it will eventually come over into the Q. But let's say you don't like a particular song. You don't like George Harrison's songs and you want to change the Q. So it can change. The Q is what actually is being used to drive the ship there. It's going to look to the Q every time and see. The playlist that's downloaded is still there. It's still in list items. It's never changed. It's your working playlist. And that's what it's consulting. And that's deliberate because they don't want to use, they don't want to make a permanent change to the downloaded playlist. You've got that forever. But what you're using to actually control playback is the Q. And that's the only evidence of how it works. Their use case 4, the shifting theory, violated the claim construction, but their theory of use cases 1 and 2 also violates the construction because the construction says the downloaded file has to be used. What you're saying is that once the information is transferred from the downloaded list items file into the Q, it's no longer list items. It's not. It becomes Q data. Actually, it becomes, there's something called Q items, which is another table that's stored. And then you have a working playlist and working memory. And that's the Q. Assuming these different data structures are files, you know, list items, Q, list, and Q, nevertheless, they're all different files. They're different files. They need to have the same file. You need to have the same file. And the reason that they had the traveling data theory was that they wanted to say basically this sort of bunch of data is moving along, and first this is the sequencing file, then this is the sequencing file, then this is the sequencing file. And the construction, the district court was clear on that all along. The clarification before trial was not a change. It made very clear from, straight out of the language in the re-exam. But the other side is saying this morning, and I can't tell if this is a new argument yet, that it's the list items that is the sequencing file. And yes, it's getting a little bit of help from an additional file called the Q file, but there's nothing wrong with having some assistance from a second file in order to execute these different functions being performed by the first file because the judge's first clarification pre-trial permitted that kind of scenario. So that's what I think. If there's not a new argument, why is that? No, well, okay, yeah. If there were evidence that list items and the Q were both being consulted with respect to every song, that might infringe. But there wasn't any such evidence because the only evidence was that the information was transferred into the Q and then list items was not used further. But the Go command, you're drawing from the list items, right? You're drawing originally from list items. It's called seeding the Q or populating the Q. So I guess that would be their theory, like maybe the first part of the function of controlling the playback of each song is kick-started off by the list items, but then list items is assisted. No, list items is not assisted. That's where the problem is, because list items isn't assisted. All the expert testimony was consistent. Once it's populated, list items is forgotten. It's all about the Q that's used for control. Again, four different times personal audience said that at trial. Our experts said that again. The jury wasn't entitled to make that up. They just told me that your Google witnesses gave the story. No, if you read that testimony, all they say is the initial populating of the Q. That's what they said, is that list items is used to send information to Q items and then to the Q. They did not say there was control all the way through, because that's just not true. So coming back to my original question, what you're saying is that in order to satisfy this claim limitation, list items has to do this in real time, that seeding the information into the Q is not sufficient. That's the heart of the matter, is it? If real time means, yes, it needs to be consulted as you're playing Song 2, you've got to check to see what the Q tells you. Yes, I think we're on the same page about real time, but there could be a debate over how quick, but it needs to be every song you've got to check with the Q, and you're not going back to list items. You're just, it's as if… Even though the information that the Q is using originally came from list items. Sure. I mean, a lot of things come down in list items. All of your playlists come down in list items. So there's a big source of information out there. But what's actually used to control playback, according to all the witnesses, both the engineers and the experts of both sides, and actually Mr. Hanley's closing, what's actually used for control, quote, unquote, is the Q. Mr. Becotel, maybe I'm asking a question based on technical impossibility, and if that's the case, I apologize. But what would be the case if you moved the whole of list items and just put it in the Q? It wouldn't work if list items has multiple playlists, because the Q is basically, the Q is like an array. It's like a what? An array. Okay. It's basically just a list of music file numbers. Yeah. And you wouldn't be able to take your whole playlist and dump it all into the Q. Okay. So that's why you hit a particular playlist, and it moves the information, that small fraction of what's in list items gets moved into Q items. So if list items has 50 playlists in it, and you move playlist 22, that's what you're just talking about. Exactly. And then that's the playlist, and let's say you go to the gym and you decide to have a shorter workout today, because you're sitting on the bench, you can shorten that playlist and only play songs 1, 3, and 5, but you won't be changing your regular gym playlist that you want to use tomorrow. That's the whole beauty of the Q. You have a working playlist. And that is what is used to control playback and respond to different control commands. So is it fair to say that, and I understand the theory that there's no real-time control by list items because it's seeding the Q. Is there any issue as to whether the seeded information is performing the functions here through the Q? The seeded information? Well, the seeded, it's just data. It's not a command. This is like C++ code or whatever. So you've got information, and it refers to something called mplaylist. The code name for the Q is mplaylist. So you're going to look at mplaylist, and it's going to say, do you want to go to the next song? And it's going to check what the next song is in the Q. So the data are just either stored in a table, like in Q items, or they're stored in a working memory, as in the case of the Q itself. But there's no control there. The control is all by the program, and the program uses the information in the Q, not the information in list items. And there just wasn't any dispute about that at trial. Again, this really was a game of whack-a-mole, where they keep coming up with different theories. I don't know if you want me to address use case three. He mentioned it briefly. But it's all made up by the lawyers after the fact. It's just absolutely false. There simply is no continuous consultation of list items. That's the short version of it. There was a reference at trial to something called get audio ID and list ID. That's a function. It was not a reference to a list item ID, much less the list item ID that came from list items. It's an invention of the lawyers after the fact. There just simply was no evidence of consulting the Q with respect to playback of every song in the playlist, and that's what the control is. When it comes to a user wanting to skip around, maybe skipping a song, is that controlling playback of the songs, or is that responding to control commands? If you define control commands, well, I think it's usually a combination of both, because you can have a control command that basically shuffles, or you can have a control command that says go or play. In Google Play Music, there are ways that you can add things to your Q, subtract things from your Q. Not all of that is covered by the claims, of course. The claims refer to things like the continual playback, which I could get to if you want to hear the alternative ground for affirmance. I thought not. But yes, you have to control playback of every song and respond to control commands. They are complementary requirements. Right. I'm just trying to understand the distinction between the two. Right. My example seems like it fits both of those. I think in some cases you will be, because, for example, if you have a control command that says now you want to shuffle, then that will also result in the Q taking a different shape. It'll be 1, 8, 7, 6, 4, whatever, and then it'll play it 1, 2, 3. But it will always consult the Q in doing that. That's the key point for present purposes. Okay. Thank you. Mr. Hanlon. Thank you. Just a few points. He has two minutes. Just a few points, Your Honors. Your Honor mentioned the skip command. The court decided in its J-mall that the skip forward limitation, which is claim 4 of the 187 patent, was infringed. And that claim 4, which has the skip command, requires scanning forward in the received sequencing file. So we have a conclusive determination that's not challenged by Google on Appeal that the sequencing file claim construction is met with respect to not only go and play, he didn't find that, but there's a conclusive finding by him that it's met with respect to the skip command, which has to go to the received sequencing file. So we have at least one control command that we know accesses the downloaded and stored list items table. Point number two. Mr. Evans testified at trial, Appendix 47056. If you click on the play button, it will start playback with the first song in the playlist. The evidence is that the playlist is list items. The playlist is not the cue. Another piece of the playlist is the playlist data, right? The playlist is the playlist in the cue. And Google's own witnesses testified that the playlist is the playlist in list items. And Google's own witnesses admitted that playlist refers to the playlist in list items. And that's cited on page 22 of the blue brief. It's Myer Patel, the technical expert, and list items is the table where we store our playlist. The same witness, Mr. Evans, testified, is it fair to say that the downloaded playlist, again list items, is used to control the order of the songs that are used to playback? He concludes, after some pairing, yes. So we have evidence that it not only starts playback, it sees the cue and determines the order of playback. And in the absence of a control command, it keeps on playing. So that gets us to the repeated reference requirement, which is this, that you need to continually go. I think we're about out of time, so just a couple more sentences. Thank you. Yeah, the court rejected a repeated reference requirement. We addressed that in the grade 15-16. And the re-exam prosecution history is inconsistent with a repeated reference requirement because it has two files, one of which is downloaded, 307, one of which is only created on the player, 305. And even though the control commands only refer to the file created on the player, which is 351, that still infringes. And that's exactly the way Google Play Music works. You have one file that's downloaded. I think we're out of time. Thank you. Thank you. Thank both counsel. The case is submitted.